IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOSEPH P. FRANKL, Regional         )   CIVIL NO. 10-00014 JMS-RLP
Director of Region 20 of the       )
National Labor Relations           )   FINDINGS AND RECOMMENDATION TO
Board, for and on behalf of        )   GRANT IN PART AND DENY IN PART
the NATIONAL LABOR RELATIONS       )   PETITIONER'S MOTION FOR
BOARD,                             )   ATTORNEYS' FEES AND RELATED
                                   )   NON-TAXABLE EXPENSES; APPENDIX
            Petitioner,            )   A
                                   )
      vs.                          )
                                   )
                                   )
HGH CORPORATION, PACIFIC BEACH     )
CORPORATION and KOA                )
MANAGEMENT, LLC, A SINGLE          )
EMPLOYER, d/b/a PACIFIC BEACH      )
HOTEL,                             )
                                   )
            Respondents, and       )
                                   )
ROBERT MINICOLA,                   )
                                   )
            Additional             )
            Respondent in          )
Contempt.                          )
_____  )


        FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
       PETITIONER'S MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE
                                EXPENSES[1]

            Before the Court, pursuant to a designation by United

States District Judge J. Michael Seabright, is Petitioner Joseph

---

        [1]  Within fourteen (14) days after a party is served with a
copy of the Findings and Recommendation, that party may, pursuant
to 28 U.S.C. § 636(b)(1)(B), file written objections in the
United States District Court.  A party must file any objections
within the fourteen-day period allowed if that party wants to
have appellate review of the Findings and Recommendation.  If no
objections are filed, no appellate review will be allowed.

F. Frankl, Regional Director of Region 20 of the National Labor Relations Board ("Petitioner"), for and on behalf of the National Labor Relations Board's ("NLRB") Motion for Attorneys' Fees and Related Non-Taxable Expenses, filed on February 24, 2012 ("Motion"). See ECF No. 158. Petitioner requests an award: (1) to the NLRB of $285,599.15 in attorneys' fees and $11,389.02 in costs; and (2) to the International Longshore and Warehouse Union, Local 142, AFL-CIO (the "Union") of $12,266.63 in combined fees and costs, pursuant to the Court's Contempt Order, filed on November 29, 2011 ("Contempt Order," ECF No. 147). Respondents HGH Corporation, Pacific Beach Corporation, Koa Management, LLC, and Robert Minicola (collectively "Respondents") filed their Memorandum in Opposition to Petitioners' Motion on March 16, 2012, and Petitioner filed his Reply to Respondents' Memorandum in Opposition on March 23, 2012. See ECF Nos. 162, 165.

On February 27, 2012, the Court found this matter suitable for disposition without a hearing pursuant to LR 54.3(f) of the Local Rules of Practice for the United States District Court for the District of Hawaii. See ECF No. 159. Based on the following, and after careful consideration of the Motion, the supporting and opposing memoranda, declarations, and exhibits attached thereto, and the record established in this action, the Court FINDS AND RECOMMENDS that Petitioner's Motion be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that the District Judge AWARD the NLRB $236,764.95 in attorneys' fees and

$11,389.02 in costs, and the Union $4,563.81 in combined fees and costs, for a total award of $252,717.78.

<u>BACKGROUND</u>

This case arises out of Waikiki's Pacific Beach Hotel's (the "Hotel") repeated violations of the National Labor Relations Act ("NLRA" or the "Act"). Petitioner has filed a multitude of complaints asserting that Respondents violated the Act by, among other things, meddling with, failing to recognize, and refusing to negotiate with the Union. Petitioner's complaints resulted in a September 30, 2009 decision by Administrative Law Judge James M. Kennedy finding that Respondents committed numerous NLRA violations, followed by a June 14, 2011 affirmance by the NLRB. While waiting for the NLRB decision, Petitioner filed a petition for interim injunctive relief from this Court pursuant to § 10(j) of the NLRA, 29 U.S.C. § 160(j) (referred to herein as "§ 10(j)").

On March 29, 2010, the Court found that the NLRB would likely determine, and be affirmed by the Ninth Circuit, that Respondents engaged in a number of violations of the NLRA and that injunctive relief was necessary to prevent irreparable harm to Respondents' employees and the Union ("March 29, 2010 Injunction," ECF No. 55). The March 29, 2010 Injunction required Respondents to cease and desist from (1) withdrawing recognition of the Union; (2) refusing to bargain in good faith with the Union with respect to rates of pay, hours of employment, and

other terms and conditions for bargaining unit employees; (3) discharging employees in order to discourage Union activities and membership; (4) unilaterally changing the terms and conditions of employment of bargaining unit employees without first giving notice to, and bargaining with, the Union; and (5) in any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by the NLRA. The March 29, 2010 Injunction further required Respondents to, *inter alia*, (1) recognize and bargain in good faith with the Union with respect to rates of pay, hours of work, and other terms and conditions of employment covering bargaining unit employees; (2) resume contract negotiations and honor all tentative agreements entered into from the point that negotiations were left off on November 30, 2007; (3) reinstate several employees, including, in particular, Rhandy Villanueva; and (4) rescind, at the Union's request, any or all of the unilateral changes to bargaining unit employees' terms and conditions of employment as they existed prior to December 1, 2007.

On November 29, 2011, the Court issued an Order Granting in Part and Denying in Part Petitioner's Amended Motion for Adjudication and Order in Civil Contempt and for Compensatory Relief ("Order Finding Contempt," ECF No. 146). The Court found that Petitioner had established by clear and convincing evidence that Respondents violated the March 29, 2010 Injunction by (1) disciplining and terminating Villanueva; (2) unilaterally

4

changing the number of rooms housekeepers must clean; and (3) refusing to provide the Union requested information. Petitioner failed to establish by clear and convincing evidence that Respondents violated the March 29, 2010 Injunction by banning two Union representatives from the Hotel. As to the violations, the Court concluded that contemporary sanctions were warranted, including, in relevant part, that Respondents

> Pay the Board and the Union for all costs and expenditures (including attorneys' fees) incurred through June 14, 2011 in the investigation and prosecution of this contempt proceeding, on all issues that Petitioner was successful. Petitioner shall submit a proper Motion pursuant to Local Rule 54.3 addressing the issues outlined in the Order Finding Contempt by January 20, 2012.

Contempt Order 3, ¶ 2.

The instant Motion followed.[2] The Court gave Petitioner the following instructions regarding the Motion:

> First, such Motion must address, in addition to the matters required by LR 54.3, what fees requested were reasonably incurred *solely* in connection with the investigation and prosecution of the contempt issue (that is, those fees that were incurred *only* on the contempt issue and were not also used for either the administrative proceeding or the § 10(j) proceeding), and were incurred only on those issues on which he was successful (*i.e.*, Petitioner cannot seek costs and fees related to investigating Respondents banning of Mori and Labtingao from the Hotel). Second, to the extent work product was also used for the

---

[2] The Court granted Petitioner's motion for an extension of time to file the instant Motion until February 24, 2012. <u>See</u> ECF No. 149.

5

> administrative proceeding and/or § 10(j)
> proceeding, Petitioner should address his view
> of what reasonable portion of that work
> product should be included in a fee award.
> That is, based on the unusual procedural
> posture of this matter where the contempt and
> NLRA violations substantially overlapped, it
> appears that some degree of apportionment must
> be made. Failure to follow these instructions
> and LR 54.3 may result in denial of such
> motion with prejudice.

Order Finding Contempt 81 (italics in original).

<u>ANALYSIS</u>

**A.  Determination of Chargeable Attorneys' Fees**

As previously stated, the Court's Order Finding
Contempt and Contempt Order expressly awarded the NLRB its
attorneys' fees incurred through June 14, 2011 in the
investigation and prosecution of the contempt proceeding, on all
issues that Petitioner was successful. <u>See</u> Order Finding
Contempt 80-81; Contempt Order 3, ¶ 2. The Court instructed
Petitioner to identify: (1) what fees were incurred solely on the
contempt issue; (2) what fees were incurred only on those issues
on which Petitioner was successful; and (3) to the extent work
product was also used for the administrative and/or § 10(j)
proceedings, Petitioner's view of what reasonable portion of that
work product should be included in a fee award. <u>See</u> Order
Finding Contempt 81.

In accordance with the Court's directive, Petitioner
separated his NLRB attorneys' time into four categories. First,

Petitioner states that he has not claimed reimbursement for time
NLRB agents spent in the investigation of the unfair labor
practice charges that gave rise to the contempt allegations
because Petitioner views that time as routinely necessary and
required in the handling of all charges that are filed with the
NLRB.  Second, Petitioner included 97.5% and 64% of time spent
preparing two memoranda to the Injunction Litigation Branch
("ILB") that were considered by ILB in authorizing contempt in
all of the target cases.  Third, Petitioner charged 91% of time
spent for all activities related to the preparation of the Motion
for Contempt and Amended Motion for Contempt through June 14,
2011.  Petitioner contends that the time charged for activities
in the second and third categories was reduced to reflect only
the chargeable portion of the time by reviewing the amount of
pages in the associated memoranda devoted to discussion of non-
chargeable cases and comparing it with the total number of pages
in the same document.  Finally, Petitioner billed 50% of the time
spent for all activities related to the administrative hearing,
including work associated with Cases 37-CA-8094 (June 8, 2010
information request), 8096 (unilateral change to housekeepers'
daily room assignments), 8097 (discipline and discharge of
Villanueva), 8112 (discipline/grievance-related information
requests), 8113 (financial information requests) (collectively
referred to by Petitioner as the "chargeable cases").

Respondents argue that "Petitioner's conclusory statements fail to meet his burden of addressing the reasonableness of his time for the activities involving the second, third, and fourth categories of activities for which Petitioner is claiming attorneys' fees as required by this Court's Order and the requirement of LR 54.3 to provide applicable authority." Resps.' Mem. Opp. Mot. 17. Respondents do not provide the Court with an alternative method for determining a reasonable apportionment of fees. Rather, Respondents make a blanket objection to "all of the time for which Petitioner is claiming attorneys' fees." Id.

The Court finds this argument to be without merit. LR 54.3(d) requires that the memorandum in support of a motion for attorneys' fees set forth, among other things, "the applicable authority entitling the moving party to the requested award." As Petitioner clearly identified on page 2 of his memorandum in support of the instant Motion, the Court's Order Finding Contempt and subsequent Contempt Order expressly found that the NLRB is entitled to its attorneys' fees incurred in investigating and prosecuting the contempt proceeding through June 14, 2011. Moreover, Petitioner complied with the Court's instructions to reduce fees for time spent on non-contempt issues, unsuccessful contempt issues, and overlapping administrative work product, and submitted the Affidavit of Dale K. Yashiki to that effect. As part of this process, Petitioner set forth one method of

8

apportionment that, in his view, is reasonable.  There may well be other reasonable methods; indeed, there may well be arguably better methods.  But, in the absence of a specific objection to the percentage of time claimed or an alternative method for apportionment by Respondents, the Court finds that Petitioner's determination of chargeable NLRB attorneys' fees is reasonable.

**B.  Calculation of Reasonable Attorneys' Fees**

In calculating an award of reasonable attorneys' fees, district courts within the Ninth Circuit generally use the lodestar calculation set forth in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  Under this method, a court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." <u>Hensley</u>, 461 U.S. at 433.

Once calculated, the lodestar amount is presumptively reasonable.  <u>See</u> <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 483 U.S. 711, 728 (1987); <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (stating that "a 'strong presumption' exists that the lodestar figure represents a 'reasonable fee'").  However, in "rare and exceptional circumstances," a court may decide to adjust the lodestar figure based on an evaluation of the factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), which

have not been subsumed in the lodestar calculation.[3]  <u>See</u> <u>Fischer</u>,

214 F.3d at 1119 n.4.  The factors the Ninth Circuit identified

in <u>Kerr</u> are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Kerr</u>, 526 F.2d at 70.

## 1. Reasonable Hourly Rate

In determining whether an hourly rate is reasonable, a

court "should be guided by the rate prevailing in the community

---

[3] The following factors are subsumed within the lodestar determination: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, and (5) the contingent nature of the fee agreement."  <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (stating that "[a]djusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable hours or reasonable hourly rate at the first step . . . is a disfavored procedure") (citations and quotations omitted).  The Ninth Circuit, however, extending <u>City of Burlington v. Dague</u>, 505 U.S. 557, 567 (1992), has held that whether the fee is fixed or contingent may not be considered in the lodestar calculation.  <u>See</u> <u>Davis v. City & Cnty. of S.F.</u>, 967 F.2d 1536, 1549 (9th Cir. 1992), <i>vacated in part on other grounds</i>, 984 F.2d 345 (9th Cir. 1993).

for similar work performed by attorneys of comparable skill, experience, and reputation." <u>Webb v. Ada Cnty.</u>, 285 F.3d 829, 840 (9th Cir. 2002) (citing <u>Chalmers v. City of L.A.</u>, 796 F.2d 1205, 1210-11 (9th Cir. 1986)). Generally, the relevant community is the forum in which the district court sits. <u>Barjon v. Dalton</u>, 132 F.3d 496, 500 (9th Cir. 1997). However, rates outside the forum may be employed "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." <u>Id.</u> (quoting <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992)). The Ninth Circuit has characterized this exception to the local forum rule as a "narrow" one, of which district courts are given "considerable discretion" in its application. <u>See Schwarz v. Sec'y of Health & Human Servs.</u>, 73 F.3d 895, 907 (9th Cir. 1995).

Rather than applying Hawaii rates, Petitioner claims that the so-called "Laffey Matrix" should be used to establish the appropriate hourly rates for his Washington, D.C. and San Francisco NLRB attorneys. "Approved originally in <u>Laffey v. Nw. Airlines, Inc.</u>, 573 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), the <u>Laffey</u> matrix is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C."

11

Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010). The particular version of the Laffey Matrix that was provided to the Court by Petitioner, see Pet.'s Ex. C, represents "hourly rates for attorneys of varying experience levels and paralegals/law clerks" and was "prepared by the Civil Division of the United States Attorney's Office for the District of Columbia." Id. at n.1. This matrix was intended to be used in cases in which a "fee-shifting" statute, such as Title VII of the Civil Rights Act of 1964, the Freedom of Information Act, or the Equal Access to Justice Act, permits the prevailing party to recover "reasonable" fees. See id.

Pursuant to the Laffey Matrix, Petitioner requests the following lodestar amount for work performed by the NLRB's out-of-district counsel:

| **ATTORNEY** | **HOURS** | **ADJ. HOURS** | **RATE** | **TOTAL** |
|---|---|---|---|---|
| Judith I. Katz (JIK) (Washington, D.C) | 5.00 | 4.82 | $475.00 | $2,289.50 |
| Robert E. Omberg (REO) (Washington, D.C.) | 9.90 | 9.33 | $475.00 | $4,431.75 |
| Kayce R. Compton (KRC) (Washington, D.C.) | 35.60 | 34.10 | $420.00 | $14,322.00 |
| Olivia Garcia (OG) (San Francisco) | 27.30 | 21.70 | $475.00 | $10,307.50 |
| Jill Coffman (JC) (San Francisco) | 104.60 | 88.38 | $475.00 | $41,980.50 |
| Micah Berul (MB) (San Francisco) | 28.90 | 26.58 | $420.00 | $11,163.60 |
| Richard McPalmer (RM) (San Francisco) | 12.00 | 12.00 | $275.00 | $3,300.00 |

| Yasmin Macariola (YM) (San Francisco) | 0.50 | 0.50 | $230.00 | $115.00 |
|---|---|---|---|---|
| **TOTAL** | | | | **$87,909.85** |

See Pet.'s Mem. Supp. Mot. 5; Ex. A2. Using prevailing local rates, Petitioner requests the following for work performed by the NLRB's Hawaii counsel:

| **ATTORNEY** | **HOURS** | **ADJ. HOURS** | **RATE** | **TOTAL** |
|---|---|---|---|---|
| Thomas W. Cestare (TWC) | 55.50 | 31.42 | $325.00 | $10,211.50 |
| Dale K. Yashiki (DKY) | 1245.57 | 643.57 | $250.00 | $160,892.50 |
| Trent K. Kakuda (TKK) | 366.20 | 147.08 | $160.00 | $23,532.80 |
| Katrina Woodcock (KW) | 32.00 | 16.00 | $140.00 | $2,240.00 |
| Meredith Burns (MB) | 6.5 | 3.25 | $250.00 | $812.50 |
| **TOTAL** | | | | **$197,689.30** |

See Pet.'s Mem. Supp. Mot. 5; Ex. A2. The total award Petitioner seeks for his NLRB attorneys' fees is $285,599.15.

In this case, Petitioner argues that the Laffey Matrix should be used to determine the reasonable hourly rates of his Washington, D.C. counsel because "[NLRB] procedure requires review and approval of the activities undertaken in the instant matter, and out of necessity, San Francisco and Washington, D.C. counsel were involved." Pet.'s Reply 2. In addition, Petitioner asserts that attorneys based in Washington, D.C. have special expertise in the requirements of the NLRA and NLRB procedure. Regarding his San Francisco attorneys, Petitioner states that the

13

use of the Laffey Matrix is actually to Respondents' benefit because the hourly rates in San Francisco are higher than the matrix rates.

The Court finds that Petitioner has failed to prove that the narrow exception to the local forum rule due to the unavailability of local counsel should apply. Here, local counsel was available, and, in fact, did perform. The record shows that Petitioner utilized five Honolulu-based attorneys, several of whom had significant experience with the NLRB. Indeed, one of the Honolulu attorneys, Mr. Cestare, has 36 years of legal experience with the NLRB, or at least six years more than any of Petitioner's out-of-district counsel. For this reason, the Court rejects Petitioner's argument that his Washington, D.C. attorneys have special expertise in the requirements of the NLRA and NLRB procedure. See Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994) (holding that district court did not abuse its discretion in selecting the forum area in determining prevailing market rates where it determined that "[t]he justification of complex, specialized knowledge and experience did not apply").

In addition, while the Court recognizes the NLRB's hierarchal regional structure, it is not sufficient to warrant departure from the local forum rule. This case is analogous to Barjon, in which the Ninth Circuit declined to award San

14

Francisco rates to Sacramento-based counsel despite the concern
that such rates were necessary to the widespread enforcement of
civil rights.  See id. at 132 F.3d 501.  In the present case,
however, there is no concern that NLRA violations will not be
prosecuted.  The NLRB and its attorneys are a creature of statute
and, unlike competent private civil rights attorneys, will
continue to accept cases regardless of the hourly rates awarded
by the Court for their work.  Further, Petitioner has not
identified, nor has the Court found, a single Ninth Circuit case
in which NLRB attorneys were awarded out-of-district rates due to
their hierarchal structure.  Therefore, the Court finds that the
Laffey Matrix is not appropriate for determining reasonable
hourly rates of Petitioner's out-of-district attorneys, even
those based in Washington, D.C.

      As to Petitioner's San Francisco-based attorneys,
Petitioner fails to cite any legal authority stating that the
Laffey Matrix is applicable to any market outside the Washington,
D.C. area.  In fact, the Ninth Circuit has already questioned
whether the Laffey Matrix is a reliable measure of rates for the
San Francisco area.  See Prison Legal News, 608 F.3d at 454 ("But
just because the Laffey matrix has been accepted in the District
of Columbia does not mean that it is a sound basis for
determining rates elsewhere, let alone in a legal market 3,000

miles away.").  Consequently, the Court concludes that the local
forum rule applies here for all of Petitioner's counsel.

### a.  Hawaii-Based Attorneys

The hourly rates of Petitioner's Hawaii-based counsel
are as follows: Mr. Cestare (36 years experience, all with NLRB)
- $325; Mr. Yashiki (16 years experience, 8 with NLRB) - $250;
Mr. Kakuda (6 years experience, 5 with NLRB) - $160; Ms. Woodcock
(3 years experience, all with NLRB) - $140; and Ms. Burns (16
years experience, 13 with NLRB) - $250.  Because Respondents do
not dispute that these are reasonable hourly rates, <u>see</u> Resps.'
Mem. Opp. Mot. 9, and the Court finds such rates to be manifestly
reasonable in light of the attorneys' experience with NLRA cases,
the Court will calculate the loadstar amount based on said rates.
See <u>F.K. ex rel. A.K. v. Dep't of Educ. of Haw.</u>, Civ. No. 10-
00753 BMK, 2011 WL 2650198, at *2 (D. Haw. July 5, 2011).

### b.  Out-of-District Attorneys

This Court is familiar with the prevailing rates in the
community for similar services performed by attorneys of
comparable experience, skill, and reputation, as well as with
other prior attorneys' fee awards in this district.  Based on the
foregoing, the Court finds that the requested hourly rates for
Petitioner's out-of-district attorneys are excessive.  Despite
finding that Hawaii rates apply, however, in light of the
substantial qualifications of Petitioner's out-of-district

counsel, the Court will apply the high end of the range of rates awarded in this district.  See <u>Almodova v. City & Cnty. of Honolulu</u>, Civ. No. 07-00378 DAE-LEK, 2010 WL 1372298, at *9 (D. Haw. Mar. 31, 2010).  Accordingly, the Court hereby adjusts said hourly rates and finds that the following rates are reasonable: Mr. Katz, Mr. Omberg, and Ms. Garcia (28-30 years of experience, at least 26 years with NLRB) – $300; Ms. Coffman (22 years of experience, 18 with NLRB) – $275; Ms. Compton and Mr. Berul (12 years experience, 11 with NRLB) – $240; Mr. McPalmer (5 years of experience, 2 with NLRB) – $150; and Ms. Macariola (1 year of experience, all with NLRB) – $125.

**2. Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, the fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.  <u>Hensley</u>, 461 U.S. at 437; <u>Gates</u>, 987 F.2d at 1397.  The opposing party then has the burden of rebuttal that requires submission of evidence challenging the accuracy and reasonableness of the hours charged or the facts asserted by the fee applicant in its affidavits.  <u>Id.</u> at 1397-98.

In making an award, the district court must balance between granting sufficient fees to attract qualified counsel and avoiding a windfall to counsel.  <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1111 (9th Cir. 2008).  The court is required to

explain how it made its fee determination in a comprehensible, but not elaborate, fashion.  Id.; see also Hensley, 461 U.S. at 437 (stating that the court's explanation may be "concise," but must also be "clear").  The court need not set forth an hour-by-hour analysis of the fee request but may instead make across-the-board percentage cuts to the number of hours claimed as a "practical means of trimming the fat" from a fee application. Gates, 987 F.2d at 1399.  Indeed, the court has the authority to impose "a small reduction, no greater than ten percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation."  Moreno, 534 F.3d at 1111.

### a.    Duplicative and Excessive Time

Counsel for a fee applicant should exclude from a request time that is "excessive, redundant, or otherwise unnecessary."  Gates, 987 F.2d at 1397 (quoting Hensley, 461 U.S. at 433-34).  As a general rule, this Court allows two attorneys to bill for their appearances at court proceedings when it is reasonable and necessary for a "second chair" to appear with lead counsel.  Sheehan v. Centex Homes, Civ. No. 10-00695 SOM-RLP, 2011 WL 3678927, at *8 (D. Haw. July 27, 2011).  The Court, however, does not permit more than one attorney to bill for attending: (1) a meeting between co-counsel; (2) a client meeting; or (3) a meeting with opposing counsel.  Id.  In such a

situation, the Court typically deducts the time spent by the lowest-billing attorney or attorneys. Id.

Respondents make three primary objections to Petitioner's counsel's time sheets as duplicative: (1) time spent by Mr. Kakuda as a "second chair" to Mr. Yashiki at the administrative hearing for Case 37-CA-8097; (2) time spent for meetings and telephone conferences between co-counsel; and (3) time spent for multiple reviews and/or drafts of correspondence and documents. As to Respondents' first objection, due to the complexity of the charges and the volume of documents involved, the Court finds that it was reasonable and necessary for Mr. Kakuda to sit as "second chair" to Mr. Yashiki at the administrative hearing. Therefore, the Court will not deduct said time as duplicative.

Regarding Respondents' second and third objections, notwithstanding the Court's finding that the NLRB's hierarchal regional structure is not sufficient to warrant departure from the local forum rule for the purposes of determining a reasonable hourly rate, the Court finds that the NLRB's structure requires some degree of coordination between the regional offices to maximize efficiency and likelihood of success. However, the Court finds that the amount of time spent by multiple counsel in meetings, telephone conferences, and reviewing and/or drafting documents was excessive. The Court concludes that it is

reasonable to award Petitioner fees for one attorney from each regional office (one from Washington, D.C., one from San Francisco, and one from Honolulu) for duplicative work. Consequently, where appropriate, in cases in which timesheets by counsel from the same regional office overlap, the Court will deduct the time spent by the lowest-billing attorney or attorneys.[4]  Thus, having carefully reviewed all of the time entries and objections thereto, the Court will make the following deductions for duplicative and/or excessive time: Ms. Katz – 0.76 hours; Mr. Omberg – 1.78 hours; Ms. Compton – 3.16 hours; Ms. Coffman – 8.45 hours; Mr. Berul – 1.90 hours; Mr. Yashiki – 5.83 hours; Mr. Kakuda – 5.37 hours.[5]

**b.  Clerical or Ministerial Tasks**

---

[4]  Particularly with respect to the review and revision of drafts of documents, the Court finds that some overlap, even within a regional office, is appropriate.  For example, it is reasonable for a junior attorney to draft a memorandum and a more senior attorney to review and suggest revisions to be incorporated into a final draft.  In this and similar circumstances, the Court declines to deduct time as duplicative. See Marc M. ex rel. Aidan M. v. Dep't of Educ., Haw., Civ. No. 10-00195 DAE-RLP, 2011 WL 5320752, at *5 (D. Haw. May 26, 2011) ("delegating tasks to junior attorneys who bill at lower rates is sound and desirable") (internal quotations and citation omitted); Moreno, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on a case; after all, he won, and might not have, had he been more of a slacker.").

[5]  The Court's specific deductions for duplicative and/or excessive time are enumerated in Appendix A.

In Hawaii, clerical or ministerial tasks are not compensable because such tasks are "part of an attorney's overhead and are reflected in the charged hourly rate." <u>Sheehan</u>, 2011 WL 3678927, at *9 (quoting <u>Ko Olina Dev., LLC v. Centex Homes</u>, Civ. No. 09-00272 DAE-LEK, 2011 WL 1235548, at *12 (D. Haw. Mar. 29, 2011)). Respondents argue that many of Petitioner's counsel's time entries should be disallowed as clerical tasks. While acknowledging this district's general rule, Petitioner claims that these entries should be permitted because the attorneys in the NLRB's Honolulu office are largely responsible for performing their own clerical work. As a result, Petitioner believes that he is entitled to assess these fees to Respondents but concedes that purely clerical functions should be charged at a rate lower than an attorney rate.

Although a "reasonable attorney's fee" is intended to compensate for work performed by non-attorneys, within the Ninth Circuit, the key inquiry is whether it is customary to bill for such non-attorneys in the "relevant market":

> Thus, fees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is "the prevailing practice in a given community." Indeed, even purely clerical or secretarial work is compensable if it is customary to bill such work separately, though such tasks "should not be billed at the paralegal rate, regardless of who performs them."

<u>Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v.</u>

Redlands Ins. Co., 460 F.3d 1253, 1257 (9th Cir. 2006) (citations omitted).

In Hawaii, it is not customary to bill for purely clerical or secretarial work separately from attorneys' services. As previously stated, in this district, such tasks are subsumed in an attorney's overhead costs. The Court will therefore make the following deductions for clerical time entries: Ms. Coffman - 0.83 hours; Mr. Cestare - 0.92 hours; Mr. Yashiki - 12.74 hours; Mr. Kakuda - 5.42 hours; and Ms. Woodcock - 1.00 hours.[6] However, the Court is also aware that the prevailing practice in the District of Hawaii is for paralegals to bill separately for their independent work on cases. See Marc M. ex rel. Aidan M. v. Dep't of Educ., Haw., Civ. No. 10-00195 DAE-RLP, 2011 WL 5320752, at *6 (D. Haw. May 26, 2011). A reasonable hourly rate for an experienced paralegal is $85. See Ko Olina, 2011 WL 1235548, at *10. The Court will thus award $85 per hour for paralegal work performed by the following attorneys: Mr. Yashiki - 6.30 hours; and Mr. Kakuda - 0.45 hours.[7]

### c. Block Billing

"District courts have the authority to reduce hours that are billed in block format because such a billing style

---

[6] The Court's specific deductions for clerical time are enumerated in Appendix A.

[7] The Court's specific deductions for paralegal work are enumerated in Appendix A.

makes it difficult for courts to ascertain how much time counsel spent on specified tasks." HRPT Props. Trust v. Lingle, 775 F. Supp. 2d 1225, 1240 (D. Haw. 2011) (citing Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007)). See also Hensley, 461 U.S. at 437 (holding that fee applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); LR 54.3(d) (requiring a "description of the work performed by each attorney and paralegal broken down by hours or fractions thereof expended on each task").

Here, Petitioner's counsel's time logs contain some instances of block billing, but the vast majority of the daily entries are broken down by the number of minutes the attorney spent on each task. Viewing Petitioner's counsel's request as a whole, the limited instances of block billing do not prevent the Court from evaluating the reasonableness of the hours expended. See Ko Olina, 2011 WL 1235548, at *11. The Court therefore declines to apply a specific reduction for block billing. Where the Court was not able to determine precisely how many minutes an attorney spent on a particular task, the Court estimated the amount of time attributable to that task based on the time billed for other similar tasks and the Court's familiarity with the time previously awarded for such tasks in this district. Although this may result in an under-estimation in the amount of time that

Petitioner's counsel actually spent on a particular task, this is the burden counsel must bear for engaging in block billing. <u>See</u> <u>id.</u>

### d.    Inadequate Description of Time

The Local Rules also provide the Court the authority to reduce an award of attorneys' fees for inadequate descriptions of the services rendered:

> The party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated . . . If the time descriptions are incomplete, or such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly. For example, time entries for telephone conferences must include an identification of all participants and the reason for the call; entries for legal research must include an identification of the specific issue researched and, if possible, should identify the pleading or document for which the research was necessary; entries describing the preparation of pleadings and other papers must include an identification of the pleading or other document prepared and the activities associated with such preparation.

LR 54.3(d)(2).

In this case, Petitioner's counsel's time logs contain some entries in which descriptions of services are incomplete, e.g., entries that fail to identify the reason for a telephone conference or the document certain research was used for. However, the clear majority of the daily entries specifically describe the services rendered. Further, in the limited

instances where descriptions are incomplete, the Court was able to evaluate the reasonableness of the requested fees from context clues within the time entries immediately before and after the questionable entry. Thus, the Court declines to reduce Petitioner's counsel's time for inadequate descriptions of the services rendered.

### e.    Uncorroborated Time

Respondents object to some of the time entries regarding telephone calls, conferences, and meetings listed by Petitioners' attorneys based on a lack of corroborating time entries by other participating attorneys. However, the Court does not believe that the absence of duplicate entries necessarily means that the calls, conferences, and meetings did not occur. See Robinson v. Plourde, 717 F. Supp. 2d 1092, 1099 n.3 (D. Haw. 2010). Rather, it is more likely that Petitioner's attorneys omitted the billing, whether intentionally or inadvertently. See id. Therefore, the Court declines to disallow any uncorroborated time entries.

### 4.    Total Lodestar Award

Based on the foregoing, the Court FINDS that Defendants have established the appropriateness of an award of attorneys' and paralegal fees for NLRB counsel as follows:

| ATTORNEY | ADJ. HOURS | AWARD HOURS | RATE | TOTAL |
|----------|------------|-------------|------|-------|

| | | | | |
|---|---|---|---|---|
| Judith I. Katz (JIK) (Washington, D.C) | 4.82 | 4.06[8] | $300.00 | $1,218.00 |
| Robert E. Omberg (REO) (Washington, D.C.) | 9.33 | 7.55[9] | $300.00 | $2,265.00 |
| Kayce R. Compton (KRC) (Washington, D.C.) | 34.10 | 30.94[10] | $240.00 | $7,425.60 |
| Olivia Garcia (OG) (San Francisco) | 21.70 | 21.70 | $300.00 | $6,510.00 |
| Jill Coffman (JC) (San Francisco) | 88.38 | 79.10[11] | $275.00 | $21,752.50 |
| Micah Berul (MB) (San Francisco) | 26.58 | 24.68[12] | $240.00 | $5,923.20 |
| Richard McPalmer (RM) (San Francisco) | 12.00 | 12.00 | $150.00 | $1,800.00 |
| Yasmin Macariola (YM) (San Francisco) | 0.50 | 0.50 | $125.00 | $62.50 |
| Thomas W. Cestare (TWC) | 31.42 | 30.50[13] | $325.00 | $9,912.50 |
| Dale K. Yashiki (DKY) | 643.57 | 618.70[14] | $250.00 | $154,675.00 |

---

[8] 4.82 hours requested - 0.76 hours duplicative time = 4.06 awardable hours.

[9] 9.33 hours requested - 1.78 hours duplicative time = 7.55 awardable hours.

[10] 34.10 hours requested - 3.16 hours duplicative time = 30.94 awardable hours.

[11] 88.38 hours requested - 8.45 hours duplicative time - 0.83 hours clerical time = 79.10 awardable hours.

[12] 26.58 hours requested - 1.90 hours duplicative time = 24.68 awardable hours.

[13] 31.42 hours requested - 0.92 hours clerical time = 30.94 awardable hours.

[14] 643.57 hours requested - 5.83 hours duplicative time - 12.74 hours clerical time - 6.30 hours paralegal time = 618.70 awardable hours.

| | | | | |
|---|---|---|---|---|
| Trent K. Kakuda (TKK) | 147.08 | 135.84[15] | $160.00 | $21,734.40 |
| Katrina Woodcock (KW) | 16.00 | 15.00[16] | $140.00 | $2,100.00 |
| Meredith Burns (MB) | 3.25 | 3.25 | $250.00 | $812.50 |
| Paralegal | n/a | 6.75 | $85.00 | $573.75 |
| **TOTAL** | | | | **$236,764.95** |

Accordingly, the Court RECOMMENDS that the District Judge award the NLRB $236,764.95 in attorneys' and paralegal fees.

## C.    Calculation of Costs

As previously stated, the Court's Order Finding Contempt and Contempt Order expressly awarded the NLRB all costs and expenditures incurred through June 14, 2011 in the investigation and prosecution of the contempt proceeding, on all issues that Petitioner was successful.  See Order Finding Contempt 80-81; Contempt Order 3, ¶ 2.  Just as they argued with respect to Petitioner's entitlement to attorneys' fees, Respondents contend that Petitioner fails to comply with the requirement of LR 54.3 to provide "applicable authority."  For the reasons stated above, see supra section A., the Court rejects this argument.  Respondents also claim that Petitioner failed to apportion his costs to include only those costs that were related solely to the contempt issue and only as to successful issues.

---

[15]  147.08 hours requested - 5.37 hours duplicative time - 5.42 hours clerical time - 0.45 hours paralegal time = 135.84 awardable hours.

[16]  16.00 hours requested - 1.00 hours clerical time = 15.00 awardable hours.

However, a review of Petitioner's requested costs clearly indicates that Petitioner took these issues into account when making his request.

Petitioner seeks $11,389.02 in costs, consisting of the following expenses:

| | |
|---|---|
| Duplication of Exhibits for<br>Motion for Adjudication of Contempt | $602.38 |
| Court Reporter/<br>Transcript of ALJ Hearing | $9,206.11 |
| Duplication of Exhibits for Amended<br>Motion for Adjudication of Contempt | $849.94 |
| Binders for Exhibits for Amended<br>Motion for Adjudication of Contempt | <u>$730.59</u>[17] |
| **TOTAL COSTS** | **$11,389.02** |

<u>See</u> Pet.'s Mem. Supp. Mot. 26-27; Ex. A3.  In accordance with LR 54.3(d)(3), Petitioner attached copies of receipts to support the amounts claimed as costs.  <u>See</u> Pet.'s Ex. Q.  Upon review of the requested costs and receipts, the Court finds that these expenses, as adjusted, are compensable.  Therefore, the Court RECOMMENDS that the District Judge award the NLRB $11,389.02 in costs.

**D.    Determination of Union Fees and Costs**

In addition to NLRB attorneys' fees and costs, the

---

[17]  Petitioner originally requested $1,078.00 for the cost of binders, including shipping from the NLRB's Maryland headquarters.  In his Reply, Petitioner amended this cost to reflect the cost of binders obtained locally to $730.59.  <u>See</u> Pet.'s Reply 10.

Court's Order Finding Contempt and Contempt Order expressly awarded the Union all costs and expenditures (including attorneys' fees) incurred through June 14, 2011 in the investigation and prosecution of this contempt proceeding, on all issues that Petitioner was successful. See Order Finding Contempt 80-81; Contempt Order 3, ¶ 2. Petitioner requests an award to the Union of $12,266.63 in combined fees and costs ($9,524.92 for Union employees' time and $2,741.71 in costs), which represents reimbursement for its "expenses incurred in pursuit of the chargeable cases, which was necessitated by Respondents' unlawful conduct." Pet.'s Mem. Supp. Mot. 27. Petitioner claims, "Since the Union had no input into the course the chargeable cases would take, [] it is reasonable for the Union to be reimbursed at 100% for its time devoted to the chargeable cases and for its costs." Id.

While the Court recognizes the Union's inability to control the course of the chargeable cases, awarding the Union 100% for all of its time devoted to said cases would be in direct contradiction to the Court's Order Finding Contempt and Contempt Order. The Court specifically instructed Petitioner to identify: (1) what fees were incurred solely on the contempt issue; (2) what fees were incurred only on those issues on which Petitioner was successful; and (3) to the extent work product was also used for the administrative and/or § 10(j) proceedings, Petitioner's

29

view of what reasonable portion of that work product should be included in a fee award. See Order Finding Contempt 81. In accordance with the Court's instructions, Petitioner suggested one method of apportionment of his NLRB attorneys' time that, in his view, is reasonable. Under this method, time devoted to chargeable cases was reduced by 50%. Having found that this method was reasonable for apportioning time spent by Petitioner's NLRB attorneys, the Court further finds that it is reasonable to similarly apportion the Union's fees and costs.

As to the Union's fees, Respondents object to the hourly rates charged by Union employees on the basis that they did not provide timesheets and pay stubs to verify said rates. Respondents also dispute specific entries on Dave Mori's time log for work regarding Cases 37-CA-8095 and 8098, which were not chargeable cases, as well as entries by several Union employees where inadequate descriptions of services were provided.

Based on the declarations submitted by Union employees regarding their experience and duties, the Court finds the hourly rates charged to be reasonable. However, the Court finds that it is appropriate to deduct time from Mr. Mori due to his inclusion of time on non-chargeable cases. Because Mr. Mori block billed many of his entries, it is difficult for the Court to make specific deductions to time; as a result, the Court finds that it is reasonable to make an across-the-board percentage deduction of

ten percent of Mr. Mori's billed time, in the amount of $523.63.
For the reasons stated above, see *supra* Section B.2.d., the Court
declines to reduce the Union's fees for inadequate descriptions
of the services rendered.

As to the Union's costs, Respondents object to all of
claimed costs based on the Union's failure to attach copies of
invoices and receipts.   See LR 54.3(d)(3) ("In addition to
identifying each requested non-taxable expense, the moving party
shall set forth the applicable authority entitling the moving
party to such expense and should attach copies of invoices and
receipts, if possible.").   In its Reply, the Union provided
copies of invoices to support its claim for $2,741.71 in costs.
See Pet.'s Reply Ex. 2.   Upon review of these invoices, however,
the Court notes that no invoices, nor an explanation for their
absence, were provided to support the Union's claims for: (1)
$1,743.48 for "R Covert meeting w/Fiesta, NLRB, Tanaka re 8097";
(2) $523.56 for "D Lam mtg w/ G Fujimura, subpoena hearing 8097";
(3) $301.58 for "[a]ttorney costs - photocopies, parking,
postage, research, etc. 8097"; or (4) $45.77 for "[a]ttorney cost
- research 8097".   Pet.'s Ex. B1.   Therefore, the Court finds
that these costs, amounting to $2,614.39, are not compensable.
Thus, the Court RECOMMENDS that the District Judge award the

Union $4,500.15 in fees[18] and $63.66 in costs,[19] for a combined award of $4,563.81.

CONCLUSION

In accordance with the foregoing, the Court FINDS and RECOMMENDS that Petitioner's Motion for Attorneys' Fees and Related Non-Taxable Expenses, filed on February 24, 2012, be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that the District Judge AWARD the NLRB $236,764.95 in attorneys' fees and $11,389.02 in costs and the Union $4,563.81 in combined fees costs, for a total award of $252,717.78.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, APRIL 23, 2012.



_____
Richard L. Puglisi
United States Magistrate Judge

FRANKL V. HGH CORP. ET AL.; CIVIL NO. 10-00014 JMS-RLP; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PETITIONER'S MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES

---

[18] $9,523.92 requested fees - $523.63 non-chargeable work = $9,001.29 x 0.50 apportionment = 4,500.15 awardable fees.

[19] $2,741.71 requested costs - $2,614.39 non-compensable costs = $127.32 x 0.50 apportionment = $63.66 awardable costs.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH P. FRANKL, Regional Director of Region 20 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>       Petitioner,<br><br>  vs.<br><br>HGH CORPORATION, PACIFIC BEACH CORPORATION and KOA MANAGEMENT, LLC, A SINGLE EMPLOYER, d/b/a PACIFIC BEACH HOTEL,<br><br>       Respondents, and<br><br>ROBERT MINICOLA,<br><br>       Additional<br>       Respondent in<br>Contempt.<br>_____ | CIVIL NO. 10-00014 JMS-RLP<br><br>APPENDIX A |

APPENDIX A

**A.  Duplicative and Excessive Time**

| **ATTORNEY** | **DATE** | **ADJ. HOURS**[1] | **WORK DESCRIPTION** |
|---|---|---|---|
| | | | |

---

[1]  Petitioner's counsel's adjusted time is submitted in terms of minutes.  For simplicity purposes, the Court has converted the contested time entries into hundredths of an hour.

| JIK | 1/14/11 | 0.48 | Reviewed memo revisions |
|-----|---------|------|-------------------------|
| JIK | 1/18/11 | 0.28 | Reviewed final revisions |
| REO | 12/6/10 | 1.00 | Screened 10(j) case w/ JIK and KC |
| REO | 1/9/11 | 0.30 | Meeting w/ JIK, KC, SLS re court's jurisdiction in light of appeal |
| REO | 1/11/11 | 0.48 | Meeting w/ JIK and KC re revisions to contempt memo draft |
| KRC | 12/6/10 | 1.00 | Screened 10(j) case |
| KRC | 12/29/10 | 0.68 | Discussion w/ EAF and REO re contempt memo |
| KRC | 1/5/11 | 0.70 | Meeting w/ EAF/REO |
| KRC | 1/9/11 | 0.30 | Meeting w/ JIK, REO, SLS re court's jurisdiction in light of appeal |
| KRC | 1/11/11 | 0.48 | Meeting w/ JIK, REO re revisions to contempt memo draft |
| JC | 9/2/10 | 0.50 | Telephone meeting with J. Frankl, O. Garcia, T. Cetare, D. Yashiki and T. Kakuda re status of new charges and potential contempt issues |
| JC | 9/7/10 | 0.20 | Mtg. with J. Frankl, O. Garcia to discuss info sent by D. Yashiki and T. Kakua on 9/3 and discuss possible contempt issues |
| JC | 9/10/10 | 0.15 | Conference call - O. Garcia, T. Cetare and D. Yashiki re discussion w/ J. Katz re possible contempt and processing of charges |
| JC | 10/7/10 | 0.30 | Agenda mtg. w/ J. Frankl, O. Garcia, T. Cestare, D. Yashiki, and T. Kakuda - Discussed info sent by Yashiki and discussed each charge and potential contempt issues |
| JC | 11/9/10 | 0.30 | Agenda w/ J. Frankl, O. Garcia, T. Cestare, D. Yashiki, and T. Kakuda to discuss case and potential contempt issues |

| JC | 12/6/10 | 0.30[2] | Meet w/ Frankl and O. Garcia to discuss D. Yashiki's questions re affidavits v. live testimony in contempt and collateral estoppel, naming Minicola as addtl R and re sanctions |
|---|---|---|---|
| JC | 12/9/10 | 0.20 | Meeting w/ J. Frankl and O. Garcia re contempt proceedings |
| JC | 12/10/10 | 0.25[3] | Teleconference w/ J. Frankl, O. Garia, T. Cestare and D. Yashiki re R's request for continuance 8097 |
| JC | 12/17/10 | 0.60 | Videoconference – J. Katz, R. Omberg, K. Compton, J. Frankl, O. Garcia, M. Berul, T. Cestare, D. Yashiki and T. Kakuda – discussion re contempt issues |
| JC | 12/17/10 | 0.30 | Telephone conference – J. Frankl, O. Garcia, M. Berul, T. Cestare, D. Yashiki and T. Kakuda – discuss contempt issues |
| JC | 1/4/11 | 0.50[4] | Discussion with O. Garcia re email exchange |
| JC | 1/4/11 | 0.50 | Conference call w/ J. Katz, R. Omberg, K. Compton, N. Levin, J. Frankl, O. Garica, M. Berul, T. Cestare, D. Yashiki and T. Kakuda – Discuss contempt issues |

---

[2] Although Ms. Coffman's time was block billed, the Court determined that she spent 0.30 hours of duplicative time in a meeting also attended by Ms. Garcia based on a review of Ms. Garcia's timesheets.

[3] Although Ms. Coffman's time was block billed, the Court determined that she spent 0.25 hours of duplicative time in a conference also attended by Ms. Garcia based on a review of Ms. Garcia's timesheets.

[4] Although Ms. Coffman's time was block billed, the Court determined that she spent 0.50 hours of duplicative time in a meeting also attended by Ms. Garcia based on a review of Ms. Garcia's timesheets.

| JC | 1/7/11 | 0.50[5] | Conference call w/ J. Frankl, O. Garcia, M. Berul, T. Cestare, D. Yashiki and T. Kakuda to discuss issues raised in R. Omberg's email and how to proceed in various forums |
|----|--------|---------|---|
| JC | 1/12/11 | 0.15 | P/c w/ Yashiki and Garcia re contempt and complaint |
| JC | 1/18/11 | 1.00 | Read contempt authorization memo and discuss w/ O. Garcia and J. Frankl |
| JC | 1/27/11 | 0.15 | Discussion w/ Frankl and O. Garcia regarding Motion and Complaint |
| JC | 1/28/11 | 0.25 | Teleconference w/ O. Garcia and D. Yashiki re teleconference with ALJ Lana Parke 8097 |
| JC | 2/7/11 | 0.20 | Conference call w/ J. Frankl, O. Garcia, T. Cestare and D. Yashiki |
| JC | 2/15/11 | 0.37 | P/c w/ D. Yashiki, T. Kakuda, T. Cestare and O. Garcia re status conference and need to prepare a settlement statement required by court |
| JC | 2/18/11 | 0.18 | Discussion w/ O. Garcia |
| JC | 4/1/11 | 0.45 | Discuss w/ O. Garcia and J. Frankl |
| JC | 4/15/11 | 0.30 | Discussion w/ J. Frankl and O. Garcia re status of contempt proceeding and how to proceed in contempt given that ulp transcript is not yet finished |
| JC | 4/18/11 | 0.50 | Conference call w/ J. Frankl, O. Garcia, T. Cestare, D. Yashiki and T. Kakuda to discuss how to proceed in contempt |

---

[5] Although Ms. Coffman's time was block billed, the Court determined that she spent 0.50 hours of duplicative time in a conference call also attended by Ms. Garcia based on a review of Ms. Garcia's timesheets.

| JC | 4/19/11 | 0.30 | Conference call w/ J. Frankl, O. Garcia and D. Yashiki re conference w/ Judge Seabright |
|----|---------|------|---|
| MB | 12/17/10 | 0.60 | Videoconference with ILB Branch and Subregion 37 Re contempt proceedings |
| MB | 12/17/10 | 0.30 | Telephone conference with Subregion 37 Re contempt proceedings |
| MB | 1/4/11 | 0.50 | Phone Conference with ILB and Subregion 37 |
| MB | 1/7/11 | 0.50 | Phone Conference with Subregion 37 |
| DKY | 11/9/10 | 0.30[6] | Agenda w/ J. Frankl, O. Garcia, J. Coffman, T. Cestare and T. Kakuda re potential contempt and case |
| DKY | 12/10/10 | 0.15 | Telephone conference w/ J. Coffman, O. Garcia, J. Frankl, T. Cestare re continuance |
| DKY | 2/10/11 | 0.25 | Discussion w/ T. Cestare & T. Kakuda re 565 |
| DKY | 3/24/11 | 0.15[7] | Discussion w/ T. Cestare |
| DKY | 9/2/10 | 0.50 | Telephone conference w/ J. Frankl, O. Garcia, J. Coffman, T. Cestare and T. Kakuda re: new charges and contempt |
| DKY | 9/10/10 | 0.15 | Conference call – O. Garcia, J. Coffman, and T. Cestare re Region's discussions w/ J. Katz regarding possible contempt and processing of charges |

---

[6]  Although Mr. Yashiki's time was block billed, the Court determined that he spent 0.30 hours of duplicative time in a meeting also attended by Mr. Cestare based on a review of Mr. Cestare's timesheets.

[7]  Although Mr. Yashiki's time was block billed, the Court determined that he spent 0.15 hours of duplicative time in a meeting also attended by Mr. Cestare based on a review of Mr. Cestare's timesheets.

| DKY | 10/7/10 | 0.30 | Agenda w/ J. Frankl, O. Garcia, J. Coffman, T. Cestare and T. Kakuda |
|-----|---------|------|----------------------------------------------------------------------|
| DKY | 11/9/10 | 0.30 | Telephone agenda w/ J. Frankl, O. Garcia, J. Coffman, T. Cestare, and T. Kakuda – discussed cases and contempt issues |
| DKY | 12/17/10 | 0.90 | T/conference w/ ILB; t/conference w/ Region 20 (J. Katz, R. Omberg, K. Compton, J. Frankl, O. Garcia, J. Coffman, M. Berul, T. Cestare, T. Kakuda) re contempt |
| DKY | 1/4/11 | 0.50 | Teleconference w/ ILB (J. Katz, B. Omberg, K. Compton) and R20 (J. Frankl, O. Garcia, J. Coffman, M. Berul); T. Cestare, T. Kakuda re contempt strategy |
| DKY | 1/7/11 | 0.50 | T/c w/ R20 re: strategy (J. Frankl, O. Garcia, J. Coffman, M. Berul, T. Cestare, T. Kakuda) re how to proceed in various forums |
| DKY | 2/7/11 | 0.30 | Teleconference w/ J. Frankl, O. Garcia, J. Coffman & T. Cestare re settlement; discussion w/ Cestare |
| DKY | 2/11/11 | 0.45 | Discuss w/ T. Kakuda and T. Cestare inclusion of exhibits in contempt |
| DKY | 2/15/11 | 0.40 | Teleconf w/ O. Garcia, J. Coffman, T. Cestare and T. Kakuda re status conference and settlement statement for the court |
| DKY | 3/28/11 | 0.18 | Discuss Reply memo draft w/ T. Cestare |
| DKY | 4/19/11 | 0.50 | Status conference w/ Judge Seabright |
| TKK | 2/10/11 | 0.25 | Discuss bug spray w/ Cestare and Yashiki |
| TKK | 9/2/10 | 0.50 | Teleconference with J. Frankl, O. Garcia, J. Coffman, T. Cestare and D. Yashiki re status of new charges and potential contempt issues |

| ATTORNEY | DATE | ADJ. HOURS | WORK DESCRIPTION |
|---|---|---|---|
| TKK | 10/7/10 | 0.30 | Agenda (teleconference) with J. Frankl, O. Garcia, J. Coffman, T. Cestare and D. Yashiki re each new charge filed and potential contempt issues |
| TKK | 12/17/10 | 0.90 | Teleconference with J. Katz, R. Omberg, K. Compton, J. Frankl, O. Garcia, J. Coffman, M. Berul, T. Cestare, D. Yashiki re contempt |
| TKK | 1/4/11 | 0.50 | Teleconference with J. Katz, R. Omberg, K. Compton, J. Frankl, O. Garcia, J. Coffman, M. Berul, T. Cestare, D. Yashiki re contempt strategy |
| TKK | 1/7/11 | 0.50 | Teleconference with J. Frankl, O. Garcia, J. Coffman, M. Berul, T. Cestare, D. Yashiki re strategy |
| TKK | 2/11/11 | 0.45 | Discuss with Cestare and Yashiki inclusion of exhibits in contempt |
| TKK | 2/15/11 | 0.37 | Teleconference with O. Garcia, J. Coffman, T. Cestare and D. Yashiki re status conference and settlement statement for District Court |
| TKK | 4/18/11 | 0.50 | Teleconference w/ J. Frankl, O. Garcia, J. Coffman, T. Cestare, and D. Yashiki re proceeding in contempt |
| TKK | 4/19/11 | 0.50 | Status conference with Judge Seabright |
| TKK | 6/6/11 | 0.60 | Discussion with Yashiki about including remedy requesting that Watanabe or Hayashi read the contempt order to employees |

## B.   Clerical or Ministerial Tasks

| ATTORNEY | DATE | ADJ. HOURS | WORK DESCRIPTION |
|---|---|---|---|
| JC | 11/28/10 | 0.07 | Send draft Request for Contempt w/ edits to O. Garcia |

| | | | |
|---|---|---|---|
| JC | 1/31/11 | 0.08 | Forward most recent draft of Memo to O. Garcia (who forwarded to J. Frankl) |
| JC | 2/2/11 | 0.08 | Forward to O. Garcia |
| JC | 2/14/11 | 0.20 | Emails re filing |
| JC | 2/15/11 | 0.20 | Emails re contempt filing |
| JC | 2/22/11 | 0.20 | Assemble estimate of hours and forward |
| TWC | 6/9/11 | 0.92 | Help coordinate Kinkos copying issues; help coordinate exhibits |
| DKY | 10/12/10 | 0.05 | Schedule Carmelita Labtingao and Tracy Takano for affidavits |
| DKY | 11/17/10 | 0.20 | Submit draft complaint and ILB memo to J. Coffman |
| DKY | 11/29/10 | 0.20[8] | Scan and save complaint |
| DKY | 11/29/10 | 0.20[9] | Scan and save 10(j) memo |
| DKY | 1/18/11 | 0.20 | T/c w/ Mori to schedule appt |
| DKY | 1/20/11 | 0.25 | Email witnesses re schedule for trial and for prep; t/c w/ De Costa |
| DKY | 1/21/11 | 0.25 | T/c w/ Labtingao re witnesses; email Villanueva re appts |
| DKY | 2/7/11 | 0.20 | T/c w/ Lindo re scheduling meeting & Villanueva |
| DKY | 2/8/11 | 0.20 | E-message witness re trial start date |
| DKY | 2/8/11 | 0.05[10] | Scan SDT |

---

[8] Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.20 hours doing clerical work.

[9] Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.20 hours doing clerical work.

[10] Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.05 hours doing clerical work.

| DKY | 3/16/11 | $0.10^{11}$ | Email motion to Coffman for review |
|-----|---------|-------------|-------------------------------------|
| DKY | 3/16/11 | 1.00 | Begin copying production logs as evidence |
| DKY | 3/17/11 | 0.50 | Continue copying production logs |
| DKY | 3/18/11 | 0.25 | Scan motions and orders to show cause & email to J. Coffman |
| DKY | 3/21/11 | 0.25 | File memo in opp to motion to R's request to postpone administrative hearing |
| DKY | 3/22/11 | $0.10^{12}$ | Save & forward Rs' supp. Memo re motion to postpone |
| DKY | 3/26/11 | 0.25 | Duplicate PBX log |
| DKY | 3/28/11 | 0.15 | Duplicate part of Security log |
| DKY | 3/28/11 | 0.40 | Duplicate more production logs for evidence |
| DKY | 4/18/11 | 0.25 | Print transcripts |
| DKY | 10/13/10 | $0.05^{13}$ | Scan letter re contempt consideration (to Union) |
| DKY | 1/7/11 | $4.05^{14}$ | Prepare for duplication of materials by Kinkos for contempt filing; list number of pages and tabs needed; list number of exhibits to each exhibits; secure binders |
| DKY | 1/12/11 | 0.18 | Forward drafts of exhibit list; complaint & motion for excess pages to Trent w/ instructions |

---

[11]  Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.10 hours doing clerical work.

[12]  Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.10 hours doing clerical work.

[13]  Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.05 hours doing clerical work.

[14]  Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.50 hours doing clerical work.

| DKY | 1/13/11 | 0.10 | Discuss assignments w/ Trent |
|-----|---------|------|------------------------------|
| DKY | 1/13/11 | 0.08 | Send 1st section of Memo and Motion to J. Coffman for review |
| DKY | 2/3/11 | 0.20[15] | Send supplemental aff to Mori; prepare copies for inclusion in exhibits to contempt memo |
| DKY | 2/23/11 | 0.50 | Scan settlement statement and send to DRA Coffman |
| DKY | 3/21/11 | 0.50 | Print and save to files Rs' Memo in Opposition to P's Motion for Contempt |
| DKY | 3/30/11 | 0.20 | Scan, file and print motion for extension of time |
| DKY | 4/21/11 | 0.18 | Download and print transcripts for 4/11 to 4/15 |
| DKY | 6/9/11 | 0.92 | Work with FedEx Kinkos on tab preparation for exhibits to Amended Motion for Contempt; 3 emails to/from Kinkos; t/c 2x re wrong tab; review 2 versions of tabs |
| DKY | 6/10/11 | 0.73 | Check tabs again from Kinkos |
| TKK | 3/23/11 | 0.15 | Filed NLRB GC's opposition to Respondents' motion to postpone the administrative hearing and served Respondents by email |
| TKK | 1/27/11 | 3.37 | Prepared exhibits (for copying) in support of motion for contempt to be filed in US district court |
| TKK | 2/14/11 | 0.50[16] | Filed motion for contempt and other associated documents with US district court |

---

[15] Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.20 hours doing clerical work.

[16] Although Mr. Kakuda's time was block billed, the Court estimates that he spent 0.50 hours doing clerical work.

| | | | |
|---|---|---|---|
| TKK | 6/8/11 | 0.50[17] | Deliver exhibits to copiers for amended motion for contempt |
| TKK | 6/13/11 | 0.90 | Check tabs from copiers for exhibits to amended motion for contempt |
| KW | 4/5/11 | 1.00 | Picked up records at law office, sorted by date |

## C.   Paralegal Work

| ATTORNEY | DATE | ADJ. HOURS | WORK DESCRIPTION |
|---|---|---|---|
| DKY | 2/10/11 | 0.50 | ID & duplicate exhibits for trial |
| DKY | 3/9/11 | 0.50[18] | Pull files & duplicate disciplinary action |
| DKY | 4/2/11 | 3.75 | Organize and duplicate exhibits for trial |
| DKY | 4/10/11 | 1.55 | Mark and prepare exhibits for next part of trial 7965, 8064, 8094, 8096, 8112, 8113, 8145 |
| TKK | 2/9/11 | 0.45 | Drafted and emailed Coffman a revised index of exhibits to be filed with the motion for contempt in US district court |

---

[17]   Although Mr. Kakuda's time was block billed, the Court estimates that he spent 0.50 hours doing clerical work.

[18]   Although Mr. Yashiki's time was block billed, the Court estimates that he spent 0.50 hours doing clerical work.